**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

REGINALD PILINKO,

        Plaintiff,

vs.                                                         Case No. 3:08-cv-1086-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Reginald Pilinko ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits. His alleged inability to work is based on the physical impairments of degenerative disc disease, blindness of the right eye,[2] neck and back pain,[3] fibromyalgia, chronic fatigue syndrome,[4] and recurrent pneumonia.[5] On July 7, 2005, Plaintiff filed an application for disability insurance benefits, alleging an onset date of May 12, 2005. Tr. at 104. On April 8, 2008, an Administrative Law

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 12), and the Order of Reference was entered on May 28, 2009 (Doc. No. 13).

[2] Transcript of Administrative Proceedings (Doc. No. 6; "Tr.") at 16.

[3] Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 10; "Pl.'s Mem.") at 1.

[4] Pl.'s Mem. at 1; Tr. at 117.

[5] Tr. at 117.

Judge ("ALJ") held a hearing, at which Plaintiff and a vocational expert testified. Tr. at 14, 633-68. On May 30, 2008, the ALJ issued a Decision finding Plaintiff not disabled. Tr. at 14-25. On June 23, 2008, Shirley Hartman, M.D. ("Dr. Hartman"), Plaintiff's primary treating physician, submitted a four-page letter detailing the aspects of the ALJ's Decision with which she disagrees. Tr. at 629-32. The Appeals Council received Dr. Hartman's June 23, 2008 letter and made it a part of the record. Tr. at 8. On September 16, 2008, after considering Dr. Hartman's letter,[6] the Appeals Council denied Plaintiff's request for review. Tr. at 5-7. On November 12, 2008, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision. Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Plaintiff raises one issue: whether the ALJ improperly discounted the medical opinion of treating physician Dr. Hartman. Pl.'s Mem. at 1. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the ALJ failed to provide an adequate explanation for discounting the medical opinion of Dr. Hartman, making it impossible to determine whether the reasons for discounting Dr. Hartman's opinion are supported by substantial evidence. Therefore, the Commissioner's final decision is due to be reversed and remanded for further proceedings.

---

[6] See Tr. at 5. "[A] federal district court must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1258 (11th Cir. 2007). Because the Appeals Council considered this letter, this Court must consider it as well.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  See 20 C.F.R. §§ 404.1520 and 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The ALJ performed the required five-step sequential inquiry.  Tr. at 15-25.  At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since May 12, 2005 (the alleged onset date).  Tr. at 16.  At step two, the ALJ found Plaintiff suffers from the following severe impairments: "degenerative disc disease and blindness of the right eye."  Tr. at 16.  At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 21.

The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a significant range of light work activity on a sustained basis.  Tr. at 22.  Plaintiff can lift twenty pounds occasionally and ten pounds frequently.  Tr. at 22.  Plaintiff can sit, stand, or walk about six hours in an eight-hour workday.  Tr. at 22.  He can occasionally climb stairs,

---

[7]  "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

stoop, balance, crouch, kneel or crawl, but he cannot climb ropes, ladders or scaffolds. Tr. at 22. He should avoid concentrated exposure to work hazards such as unprotected heights and moving machinery. Tr. at 22. At step four, the ALJ determined Plaintiff is capable of performing past relevant work as a "sales clerk," both as he previously performed such work and as generally performed in the national economy. Tr. at 25. The ALJ concluded Plaintiff has not been under a disability from May 12, 2005 (the alleged onset date) through the date of the Decision. Tr. at 25.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by

the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## **IV. Discussion**

Plaintiff contends the ALJ "erred by failing to properly evaluate the medical opinion evidence offered by Dr. Hartman, [Plaintiff]'s treating physician." Pl.'s Mem. at 13 (emphasis omitted). Dr. Hartman, a family practitioner, began treating Plaintiff on April 1, 1999. Tr. at 629. After reviewing the results of a September 11, 2003 MRI of Plaintiff's cervical and lumbar spine, Dr. Hartman indicated to Plaintiff that "you do have stenosis (narrowing) of the spinal canal (from arthritic bone spurs) that can produce total body pain [and] fibromyalgia." Tr. at 367, 562, 598.[8] Treatment notes reflect that, since January 2005, Plaintiff has made approximately twenty visits to Dr. Hartman and has contacted her approximately fifteen times regarding treatment and prescription updates. Tr. at 364-67, 369-86, 562-90, 598-626.[9]

In a July 20, 2005 letter to the Division of Disability Determinations, Dr. Hartman referred to the September 11, 2003 MRI and opined that Plaintiff suffers from "chronic fatigue syndrome and fibromyalgia secondary to cervical spinal cord compression." Tr. at 170. Dr. Hartman noted that Plaintiff has neck, back, and total body pain at levels in the six to eight out of ten range, even with daily doses of 360 milligrams of oxycodone. Tr. at 170. "He also has severe depression skirting suicidal at times, recurrent bouts of pneumonia for which the pulmonologist cannot find a cause, bouts of severe inflammation with sed rates of 100 that

---

[8] Pages 367, 562, and 598 are copies of the same document. See Tr. at 367, 562, 598.

[9] There are duplicates of pages 562-90 at pages 598-626. See Tr. at 562-90 and 598-626.

no rheumatologist can diagnose." Tr. at 170. Dr. Hartman stated that, given all of these impairments, Plaintiff "is incapable of physically working and is permanently and totally disabled." Tr. at 170.

On August 21, 2006, Dr. Hartman completed a form for the Florida Department of Health. Tr. at 365-66. Dr. Hartman stated that Plaintiff suffers from mild to moderate spasms in different areas of his body. Tr. at 365. Dr. Hartman noted that Plaintiff has a "slow, stiff, generally antalgic gait," but he does not require the use of an assistive device. Tr. at 365. He can walk approximately one-tenth of a mile; that is, he is able to walk slowly for ten to fifteen minutes with breaks. Tr. at 365. Dr. Hartman explained that "[t]hese multiple levels of sensory deficits, scattered abnormal DTRs, [and] strength are considered with cervical & lumbar MRIs showing cervical degenerative disc disease, lumbar & cervical arthritic hypertrophy & cervical spinal stenosis due to spondylosis." Tr. at 365.

On February 1, 2008, Dr. Hartman completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form. Tr. at 555-60. In the form, Dr. Hartman opined that Plaintiff can occasionally lift up to ten pounds, noting that such lifting causes Plaintiff severe pain, and Plaintiff is never able to carry any amount of weight. Tr. at 555. Dr. Hartman stated that Plaintiff can sit for ten to fifteen minutes at a time, stand for five to ten minutes at a time, and walk for thirty to forty-five minutes at a time. Tr. at 556. According to Dr. Hartman, in an eight-hour workday, Plaintiff can sit for a total of two hours, stand for a total of less than one hour, walk for a total of three hours, and would have to lie down or sit in a recliner the remainder of the day. Tr. at 556. Dr. Hartman explained that these opinions were based on particular medical findings: moderate spasm in the posterior cervical

muscles and other muscles; disc disease, spinal stenosis due to spondylosis, cervical spinal cord compression, and fibromyalgia, as indicated by the September 11, 2003 MRI; a rheumatologic disorder with periodic fever; severe inflammation; and recurrent pneumonia requiring hospitalization. Tr. at 556.

The Regulations instruct ALJs how to weigh the medical opinions[10] of treating physicians[11] properly. See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

---

[10] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[11] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

Good cause exists when (1) the opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004); see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). "The opinions of nonexamining, reviewing physicians . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." Sharfarz, 825 F.2d at 280; see also O'Bier v. Comm'r Soc. Sec. Admin., 2009 WL 1904706, at *2 (11th Cir. July 2, 2009); Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (stating that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining or a treating physician") (emphasis in original).

Here, the ALJ articulated three reasons in attempting to establish good cause for discounting Dr. Hartman's opinion: (1) Dr. Hartman's opinions are not accompanied by thorough, contemporaneous notes;[12] (2) Dr. Hartman's opinions are not supported by

---

[12] Tr. at 24.

objective medical evidence;[13] and (3) Dr. Hartman's opinions are inconsistent with Plaintiff's own testimony.[14]  Each is discussed in turn.

### A.     Treatment Notes

The ALJ based his rejection of Dr. Hartman's medical opinion in part on the finding that her opinions "are not accompanied by thorough, contemporaneous notes."  Tr. at 24.  A complete review of the record, however, reveals treatment notes from Dr. Hartman spanning nearly three years, from January 2005 to December 2007, encompassing approximately twenty office visits.  Tr. at 364-67, 369-86, 562-90, 598-626.[15]  While they are somewhat difficult to read, they are contemporaneous and detailed, consisting largely of handwritten notes documenting office visits and telephone calls regarding Plaintiff's treatment.  Tr. at 364-67, 369-86, 562-90, 598-626.  The ALJ did not discuss this evidence, raising the question of whether it was properly considered.  Although there is no rigid requirement that the ALJ specifically refer to every piece of evidence, the ALJ cannot broadly reject evidence in a way that prevents meaningful judicial review.  See Dyer, 395 F.3d at 1211.  The ALJ's summary rejection of Dr. Hartman's treatment notes constitutes such a broad rejection that judicial review is frustrated.

---

[13]  Tr. at 24.

[14]  See Tr. at 21.  The ALJ does not directly state that one of the reasons he discounts Dr. Hartman's opinion is because it is inconsistent with Plaintiff's testimony.  See Tr. at 24.  However, both parties seem to agree that inconsistency with Plaintiff's testimony is in fact a reason that the ALJ discounted Dr. Hartman's opinion.  See Pl.'s Mem. at 17-19; Memorandum in Support of Commissioner's Decision ("Deft.'s Mem.") at 9-10.

[15]  As noted earlier, there are duplicates of pages 562-90 at pages 598-626.  See Tr. at 562-90 and 598-626.

-9-

### B. Totality of Objective Medical Evidence

The ALJ found that Dr. Hartman's opinion is "not consistent with the totality of objective medical evidence of record." Tr. at 24. In making this finding, the ALJ relied primarily on two aspects of the record. First, the ALJ observed that Plaintiff's pneumonia had resolved. Tr. at 24. In discussing the medical evidence regarding Plaintiff's pneumonia, the ALJ stated that Plaintiff failed to follow the recommendations of Sebastian Stanciu, M.D., Sanjivani Joglekar, M.D., and Gregory Senstock, M.D., emergency room physicians who treated Plaintiff's pneumonia and advised Plaintiff to stop taking his pain medication. Tr. at 20-23. Based on the treatment records from these emergency room physicians, the ALJ expressed the view that Plaintiff abuses his prescription pain medication. Tr. at 22-23. However, as is apparent from Dr. Hartman's treatment notes subsequent to the emergency room visits referenced by the ALJ, Dr. Hartman specifically found that Plaintiff needs the pain medication that is prescribed to him. Tr. at 565, 580, 598 (indicating that Plaintiff's quality of life is better with the pain medication), 601 (indicating that Plaintiff's pain level is often high, but it is tolerable with a high dose of pain medication). Dr. Hartman was treating Plaintiff for his pain; the emergency room physicians were not. Moreover, in the four-page letter dated June 23, 2008, Dr. Hartman explained why she believes the pain medication is necessary and beneficial. Tr. at 629-32. Dr. Hartman stated that "[i]t is well established in the literature and in general pain management that nerve compression is appropriately treated with opiate pain medicines." Tr. at 632. Because the ALJ did not address Plaintiff's use of pain medication in light of Dr. Hartman's treatment notes or her finding that the pain medication

is necessary, it is not possible to determine whether the ALJ's Decision in this regard is supported by substantial evidence.

Second, the ALJ relied upon the opinions of Lynn Harper-Nimock, M.D. ("Dr. Harper-Nimock"), an examining physician, as well as the opinions of nonexamining state agency medical experts, in finding Dr. Hartman's opinion that Plaintiff's physical impairments prevent him from working is unsupported by the totality of the objective medical evidence. Tr. at 24. Dr. Harper-Nimock examined Plaintiff on September 27, 2005. Tr. at 183-87. Dr. Harper-Nimock observed that Plaintiff did not appear to be in acute distress, and his gait was normal. Tr. at 185. Dr. Harper-Nimock found, among other things, that Plaintiff's cervical spine showed "full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally." Tr. at 186. Plaintiff's lumbar spine showed "full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally." Tr. at 186. Plaintiff had a full range of motion in his shoulders, hips, and knees. Tr. at 186. According to Dr. Harper-Nimock, Plaintiff has only "mild to moderate limitations for heavy lifting, prolonged sitting, standing, walking or climbing." Tr. at 187.[16]

Although a treating physician's medical opinion is entitled to controlling weight unless there is good cause to discount it, every medical opinion should be considered in making the disability determination. See 20 C.F.R. § 404.1527(d). The following factors are among those to be considered in determining the weight that is given to a medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; and (5)

---

[16] The ALJ noted Dr. Harper-Nimock's observation that Plaintiff had been diagnosed with sleep apnea but was not on a CPAP machine. Tr. at 24. Because sleep apnea was not one of the primary bases for Dr. Hartman's opinion, Tr. at 170, 556, it is not necessary to address Plaintiff's sleep apnea.

-11-

specialization. 20 C.F.R. § 404.1527(d)(1)-(5); see also 20 C.F.R. § 404.1527(f). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981).

Applying these factors, it is not clear that Dr. Harper-Nimock's opinion is entitled to greater weight than the opinion of Dr. Hartman. Dr. Harper-Nimock examined Plaintiff on only one occasion, while Dr. Hartman treated Plaintiff regularly for a period of years. As to supportability, the ALJ stated that Dr. Hartman's opinion is not supported by thorough, contemporaneous treatment notes, and the ALJ concluded that Plaintiff's condition is not as dire as Dr. Hartman noted, "particularly in light of the absence of objective findings of record to support such an assessment." Tr. at 24. However, as explained supra p. 9, there are treatment notes from Dr. Hartman that were not adequately addressed by the ALJ. Tr. at 364-67, 369-86, 562-90, 598-626.[17] These treatment notes contain at least some objective medical findings, which may provide support for and be consistent with Dr. Hartman's opinion. Moreover, there is objective medical evidence that would appear to be consistent with Dr. Hartman's opinion: MRIs from September 11, 2003 and May 4, 2006, both of which show stenosis. Tr. at 367, 286. Dr. Hartman specifically referred to the September 11, 2003 MRI in her July 20, 2005 letter. Tr. at 170. Dr. Hartman specifically referred to the May 4, 2006 MRI in her June 23, 2008 letter. Tr. at 632. Dr. Hartman explained that the stenosis formed the basis of her opinion that Plaintiff suffers from "fibromyalgia secondary to cervical spinal cord compression." Tr. at 170. Indeed, Dr. Hartman's opinion regarding Plaintiff's pain

---

[17] As noted earlier, there are duplicates of pages 562-90 at pages 598-626. See Tr. at 562-90 and 598-626.

is based in large part on fibromyalgia. Tr. at 170. An August 21, 2006 Fibromyalgia Report Form indicates that Dr. Hartman identified fifteen of eighteen tender points. Tr. at 364. Because fibromyalgia often lacks medical or laboratory signs, a lack of objective evidence should not be the basis for discounting a treating physician's opinion as to fibromyalgia. See Moore v. Barnhart, 405 F.3d 1208, 1211-12 (11th Cir. 2005).

Moreover, Dr. Hartman explained in the June 23, 2008 letter that Dr. Harper-Nimock's findings of normal strength and range of motion do not show that Plaintiff is capable of working even a six-hour day. Tr. at 632. Dr. Hartman emphasized that the MRIs from September 11, 2003 and May 4, 2006 "are consistent with neurological compromise producing chronic pain." Tr. at 632. "Then the additional considerations of the inflammatory disorder referenced above causing marked fatigue and joint pain produce additional disability." Tr. at 632. Without additional explanation from the ALJ, there does not appear to be substantial evidence to support the ALJ's reasons for giving greater weight to the opinion of Dr. Harper-Nimock and the nonexamining state agency physicians.

After a thorough review of the record, the ALJ did not adequately explain his conclusion that Dr. Hartman's opinion is inconsistent with the objective medical evidence of record. The ALJ did not adequately address Dr. Hartman's treatment notes or explain how her finding is inconsistent with the September 11, 2003 and May 4, 2006 MRIs. The lack of adequate explanation makes it impossible to determine whether the ALJ's Decision in this regard is supported by substantial evidence.

### C. Plaintiff's Testimony

Finally, the ALJ apparently discounted Dr. Hartman's opinion because the restrictions Dr. Hartman identified "far exceed those described by [Plaintiff] in his testimony, especially those related to lifting and walking," Tr. at 21; that is, Plaintiff "testified that he can lift [thirty] pounds and walk a total of a mile or two, with intermittent periods of sitting." Tr. at 22.[18] As stated supra p. 6, on August 21, 2006, Dr. Hartman opined that Plaintiff can walk slowly for ten to fifteen minutes with breaks; that is, about one-tenth of a mile. Tr. at 365. On February 1, 2008, Dr. Hartman stated that Plaintiff can occasionally lift less than ten pounds, but he can never carry any amount of weight; Plaintiff can sit for ten to fifteen minutes at a time, stand for five to ten minutes at a time, and walk for thirty to forty-five minutes at a time; in an eight-hour workday, Plaintiff can sit a total of two hours, stand less than one hour, walk for three hours, and has to lie down or sit in a recliner the remainder of the day. Tr. at 556.

Plaintiff testified that his pain is worst in the mornings, when he wakes with pain levels of eleven or twelve out of ten. Tr. at 640-41, 643. Up to four hours may pass before Plaintiff's pain medication takes effect, during which time he moves around as little as possible. Tr. at 641. After his medicine takes effect, his pain level drops to a five or six. Tr. at 644. Plaintiff testified that he feels like he has the flu all the time. Tr. at 642. During a typical day, Plaintiff sometimes watches television, does "a little journaling," reads, and goes on "a little walk around outside to stretch [his] body and [his] legs." Tr. at 642. As to his ability to stand and walk, Plaintiff testified as follows:

---

[18] As noted earlier, the ALJ does not directly identify inconsistency with Plaintiff's testimony as one of the reasons for discounting Dr. Hartman's opinion. See Tr. at 24. However, both parties seem to agree that inconsistency with Plaintiff's testimony is in fact a reason that the ALJ discounted Dr. Hartman's opinion. See Pl.'s Mem. at 17-19; Deft.'s Mem. at 9-10.

| | |
|---|---|
| [ATTY:] | How long can you stand in one place? |
| [CLMT:] | I stand in one place, still–I'll stand still for about two minutes. |
| [ATTY:] | That's it? |
| [CLMT:] | Yeah, and then I have to move. |
| [ATTY:] | That's the worst–that's the worst? That's the most uncomfortable for you is kind of stand still? |
| [CLMT:] | Yes. |
| [ATTY:] | Okay. How far can you walk? |
| [CLMT:] | I can walk. |
| [ATTY:] | You can walk okay? |
| [CLMT:] | I can walk okay. |
| ALJ: | Like a mile or two? Something like that? |
| CLMT: | Yes. |
| ALJ: | Okay. |
| ATTY: | Do you have to stop or can you go straight? |
| CLMT: | I will quietly sit down during that walk, yes. I walk– |
| ALJ: | Halfway or something or what? |
| CLMT: | Pardon? |
| ALJ: | At the halfway point or what? |
| CLMT: | Just if I go for a walk out–I'm fortunate enough that out the back door there's private property, 1200 acres or so. I will go for a little walk. I will get a little tired. I will start [to] hurt a little bit. I will sit down. And I will just–there's no– |
| ATTY: | No predictability? |
| CLMT: | Yeah, there's no predictability. I can't say that I'm going to walk a tenth of a mile and need the break. I can't say that I'm going to walk a mile and take a break. |
| ALJ: | Okay. |
| CLMT: | There's no predictability to it. |
| BY ATTORNEY | |
| Q | Okay. Somewhere between a tenth of a mile and a mile and you need a break? |
| A | Yeah, yes. |

Tr. at 645-46.

It is unclear how this testimony is inconsistent with Dr. Hartman's August 21, 2006 opinion that Plaintiff can walk slowly for about one-tenth of a mile, Tr. at 365, or her February 1, 2008 opinion that Plaintiff can walk for thirty to forty-five minutes at one time without interruption. Tr. at 556. To the contrary, Dr. Hartman's opinion appears to be consistent with

-15-

Plaintiff's testimony in this regard. Additional explanation is needed to determine whether substantial evidence supports the ALJ's finding that Plaintiff's testimony as to his ability to walk is inconsistent with Dr. Hartman's opinion.

As to Plaintiff's ability to lift and carry, Plaintiff testified that he occasionally takes out the trash and is able to do his own laundry. Tr. at 643. The ALJ stated that Plaintiff "admitted that he actually lifts a 37 ½ pound bag of dog food into his car trunk." Tr. at 18. This statement does not portray the complete picture, however. With regard to the thirty-seven pound bag of dog food, Plaintiff testified as follows:

> Q        How much can you lift? Has Dr. Hartman told you whether you should or shouldn't lift anything? Or don't lift this much? Or do lift this? Or?
> A        How much can I lift? I don't know. I used to work out. You know a bag of dog food is about 37.5 pounds. I struggle to put that in the back of my car. So I don't know how much I could lift. I don't–37.5 pounds, I know I can lift that with some difficulty.
> Q        Could you do that several times, like often, or just once?
> A        I can do that once.
> Q        And I know you're looking at me like I'm crazy with these questions.
> A        No, I'm looking and I–the thought of lifting something repeatedly is like torture to me.
> Q        That's the question. Yeah, because 37 pounds is a lot of weight to be able to lift. So if you could lift that only once, that's one thing. If you could lift it repeatedly, that's a whole different thing.
> A        Yeah, that's why I looked at you. I–it's inconceivable to me to think of lifting 30 pounds plus repeatedly.
> Q        Okay. What about ten pounds repeatedly? Would your pain level let you?
> A        I'm trying to put this very clearly. Any behavior that I do repetitively, for some reason, my body reacts to it in an uncomfortable way.

Tr. at 646-47.

Plaintiff's testimony is not as absolute as the ALJ characterizes it to be. Plaintiff testified that he struggled with the bag of dog food and could lift it only once, emphasizing that repeated lifting of any weight causes him pain. Tr. at 647. Moreover, any inconsistency between Plaintiff's testimony and Dr. Hartman's opinion is explained by the June 23, 2008 letter from Dr. Hartman. Tr. at 629-32. In the letter, Dr. Hartman explains in great detail why she believes that the ALJ's Decision is incorrect. Tr. at 629-32. Dr. Hartman specifically addresses the thirty-seven pound bag of dog food:

> Your report also lists a discrepancy between my assessment of [Plaintiff]'s physical capabilities and his admission that he will occasionally lift a 37.5 lb bag of dog food. I listed what he is able to perform without undue physical consequences. If he lifts that bag of dog food, he is going to exacerbate his pain for probably hours to days. Why should this totally invalidate my medical opinions? The objective medical record demonstrates on [Plaintiff]'s cervical MRI of 9/11/03 that he has degenerative disc disease at all levels and narrowing of the discs and spinal stenosis at C5-6 and C6-7. No subsequent studies have been performed due to financial constraints, but it would be safe to assume that he has sustained progression of pathology and worsening of his spinal cord compression that is evident clinically. . . . A more current lumbar MRI 5/4/06 demonstrates a focal midline disc protrusion at L5-S1 with moderate congenital spinal canal stenosis from L2 to S1. It is well established in the literature and in general pain management that nerve compression is appropriately treated with opiate pain medicines.

Tr. at 631-32. Thus, Dr. Hartman reaffirmed her opinions even after Plaintiff testified that he struggles to lift a thirty-seven pound bag of dog food.

Dr. Hartman's opinion does not appear to be inconsistent with Plaintiff's testimony regarding his ability to walk, and Plaintiff's ability to lift is specifically addressed in Dr. Hartman's June 23, 2008 letter. Therefore, remand is appropriate for the ALJ to reconsider Plaintiff's testimony; in doing so, the ALJ should explicitly consider the June 23, 2008 letter and resolve the issues Dr. Hartman raises therein.

## V. Conclusion

A thorough review of the entire record reveals that, without additional explanation, it is not possible to determine whether the ALJ's reasons for discounting Dr. Hartman's medical opinion are supported by substantial evidence. On remand, the ALJ should reconsider the medical opinion of Dr. Hartman and address the issues raised in Dr. Hartman's June 23, 2008 letter. If Dr. Hartman's medical opinion is discounted, adequate reasons supported by substantial evidence should be clearly articulated. In accordance with the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's decision and **REMANDING** this matter with the following instructions: Reevaluate the evidence with respect to the opinion of and records from Dr. Hartman, explicitly stating what weight her opinion is given. If the ALJ decides to discount Dr. Hartman's opinion, adequate reasons supported by substantial evidence should be clearly articulated.

2. The Clerk is directed to close the file.

3. If benefits are awarded on remand, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past due benefits to seek the Court's approval of attorney's fees pursuant to 42 U.S.C. § 406(b). See Bergen v. Comm'r Soc. Sec., 454 F.3d 1273 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida on March 26, 2010.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jdf

Copies to:

Counsel of Record